UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLORIA ROMERO, individually and as Next Friend of MIKAYLA ROMERO, | § § § § | |
| *Plaintiffs*, | § § | Civil Action No. 5:17-CV-885-XR |
| v. | § § | |
| BLAZIN WINGS, INC. d/b/a BUFFALO WILD WINGS, | § § § § | |
| *Defendant*, | § § | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

On this date, the Court considered Defendant's Motion for Summary Judgment (docket no. 24). Plaintiffs did not respond. Even though unopposed, the Court will analyze the motion, the complaint, and the applicable law to determine whether summary judgment is warranted. After careful consideration, the Court GRANTS Defendant's motion.

**BACKGROUND**

Plaintiffs filed their Original Petition in the 225th Judicial District Court of Bexar County, Texas, on June 23, 2017. Docket no. 1-5. Plaintiffs bring claims against Defendant for violation of the Dram Shop Act, negligence, and negligent security. *Id.* Defendant removed to this Court on September 11, 2017, alleging that there is complete diversity of citizenship between parties and that the amount-in-controversy requirement is met. Docket no. 1. Defendant filed its Motion for Summary Judgment now before the Court on October 30, 2018. Docket no. 24.

This case stems from an automobile collision on or about June 3, 2016, in which Obrian Valdez[1] allegedly collided with the car containing Plaintiffs Gloria Romero and Mikayla Romero. Docket no. 6 at 3. Plaintiffs allege this collision injured them and seek, in this suit, to hold Defendant Blazin Wings, Inc. responsible for allegedly serving Valdez alcohol earlier in the evening of the collision.

According to the report of Michael Robert Garcia, the San Antonio Police Department officer who responded to the collision, Valdez fled the scene. Docket no. 24-4 at 6. A witness noted Valdez's license plate, and Garcia found Valdez and the car at the address listed for the license plate. *Id.* Garcia determined Valdez was "the at-fault driver who had fled the scene and was later arrested for failure to stop and render aid and intoxicated assault." *Id.* at 3. Garcia's report states that Valdez "related to me that he was at Buffalo Wild Wings this evening and had consumed approximately 4 twenty-four ounce beers and 1 shot of vodka" and "that he began to drink around 5:00 p.m. and had stopped around 6:30 p.m." *Id.* Garcia's report states that Valdez "seemed to be dazed and disoriented," "appeared to be unsteady on his feet," "had bloodshot, glassy eyes and his speech was slurred[.]" *Id.* "Based upon all of my observations, training, and experience," the report states, "I formed the opinion that [Valdez] was intoxicated and could not operate a motor vehicle safely." *Id.* at 4.

Plaintiffs allege that, on the date in question, Valdez "became intoxicated" at Defendant's Buffalo Wild Wings restaurant. Docket no. 6 at 2. They allege that, at the time Defendant's employees "were serving alcoholic beverages and/or 'setups' to [Valdez], it was apparent to [Defendant's employees] that [Valdez] was obviously intoxicated to the extent he presented a clear danger to himself and others." *Id.* at 2-3. They allege that Defendant "knew or should have

---

[1] Valdez is referred to variously by the parties as "O'Brien Valdez," "Obrian Valdez," and "O'Brian Valdez."

reasonably foreseen that there would be a large number of intoxicated persons at this event[2] and that there was a great probability for intoxicated persons to attempt to leave the premises." *Id.* at 3. Plaintiffs thus allege that Defendant was negligent and that this negligence resulted in the collision that caused Plaintiffs' injuries. *Id.*

Although Plaintiffs filed no response to Defendant's Motion for Summary Judgment, Defendant appended to that motion documents it claims Plaintiffs provided during discovery. These documents include the police report discussed above and the affidavit of Deanna Rivera. In that affidavit, Rivera claims that she and Valdez were previously in a relationship and that "[o]n the night of the wreck O'Brien Valdez fled the scene of the wreck and came to my house." Docket no. 24-2 at 9. Rivera states that "[y]ou could tell that he was obviously intoxicated." *Id.* Although she was not at Buffalo Wild Wings with Valdez, she purports to detail what took place:

> I know that immediately before the wreck he was at the Buffalo Wild Wings location where he use [sic] to work. . . . He knew most of the employees there and had some "special relationships" with some of the servers. On the night of the wreck, he drank at the Buffalo Wild Wings for 3-4 hours. The servers told him he could drink for free so long as he gave them a good tip. He drank several large beers, several shots, and at least one mixed drink. He knew the people that were serving him the drinks and was getting the drinks for free. Before he left, a Buffalo Wild Wings employee gave him free food to sober him up before he left the restaurant.

*Id.*

For its part, although Defendant confirms that Valdez was a former employee, it dismisses Rivera's affidavit as hearsay and claims not to have any evidence that Valdez was at Buffalo Wild Wings that night—it has no receipts, for example, and no witnesses or employees have indicated that they saw him. Docket no. 24-3 at 3-4.

Defendant moves for summary judgment on Plaintiffs' claims. Defendant argues that the Dram Shop Act represents the only recourse against a provider of alcoholic beverages available

---

[2] The record does not make clear what "event" Plaintiffs refer to in their Amended Complaint.

3

under Texas law, which should dispose of Plaintiffs' negligence claim. As to the Dram Shop Act claim, Defendant argues that a statutory safe harbor protects its conduct here and, in the alternative, that there is no genuine fact issue as to several elements necessary to Plaintiffs' claim. Finally, Defendant argues that Plaintiffs' negligent security claim fails as a matter of law.

## DISCUSSION

**I.    Standard of Review**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes

from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**II.     Application**

Plaintiffs bring claims under Texas law for negligence, violation of the Dram Shop Act, and negligent security.

**1.   Negligence**

Plaintiffs allege Defendant is negligent because Defendant "allowed alcoholic beverages and/or 'setups' to continue to be served to [Valdez] even after it was apparent that [Valdez] was obviously intoxicated to the extent that he presented a clear danger to himself and others." Docket no. 6 at 5. Because Defendant allegedly had "such control over the premises in question that they owed certain duties" to Plaintiffs, "the breach of which proximately caused" Plaintiffs' injuries, Plaintiffs seek damages for negligence. Defendant seeks summary judgment on this claim because it argues the Dram Shop Act represents the "exclusive remedy for plaintiffs claiming damages against a liquor vendor providing alcohol to a person 18 years of age or older, such as Mr. Valdez." Docket no. 24 at 7.

"In enacting the Dram Shop Act, the Legislature sought to 'deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public.'" *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 707 (Tex. 2007) (quoting *Smith v. Sewell*, 858 S.W.2d 350, 356 (Tex. 1993)). A "provider" is defined as "a person who sells or

5

serves an alcoholic beverage under authority of a license or permit issued under the terms of this code or who otherwise sells an alcoholic beverage to an individual." TEX. ALCO. BEV. CODE § 2.01. The Act contains an exclusivity provision, which states that "[t]he liability of providers" for "the actions of their employees, customers, members, or guests who are or become intoxicated is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages." *Id.* § 2.03. "This chapter provides the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older." *Id.* Texas courts have stated that "[t]his language clearly expresses legislative intent to exclude all common-law rights and bar all claims except those specifically authorized by the statute." *Steak & Ale of Texas, Inc. v. Borneman*, 62 S.W.3d 898, 908 (Tex. App.—Fort Worth 2001, no pet.) (collecting cases).

Since Defendant is clearly a "provider," the Act represents Plaintiffs' exclusive remedy for Defendant's allegedly negligent conduct, all of which—with the potential exception of the negligent security claim, discussed below—stems from providing alcoholic beverages. Thus, Plaintiffs' negligence claim fails.

   2. **Dram Shop Act**

Although the Act authorizes liability of providers, a plaintiff's burden of proof is high and approaches the common-law gross negligence standard. *Duenez*, 237 S.W.3d at 707. "The Act requires a plaintiff to prove that, when the alcohol was provided, the recipient 'was obviously intoxicated to the extent that he presented a clear danger to himself and others,' and the recipient's intoxication was a proximate cause of the damages suffered." *Id.* (citing TEX. ALCO. BEV. CODE § 2.02(b).

Even when a plaintiff can meet this burden, however, "the Act nevertheless affords providers a relatively simple safe-harbor." *Id.* This safe harbor shields a provider from liability

6

for its employee's actions if "(1) the employer requires its employees to attend a commission-approved seller training program; (2) the employee has actually attended such a training program; and (3) the employer has not directly or indirectly encouraged the employee to violate such law." TEX. ALCO. BEV. CODE § 106.14(a). The provider bears the burden to establish the first two elements, and if the provider meets this burden "plaintiffs must show that the employer has directly or indirectly encouraged the employee in question to over-serve." *20801, Inc. v. Parker*, 249 S.W.3d 392, 397 (Tex. 2008). The Texas Supreme Court based this interpretation on the notion that

> [i]t would indeed be extremely difficult for a provider to establish that it in no way directly or indirectly encouraged its employee to violate the law: while a provider could disclaim consciously encouraging its employees to violate the law, in some cases—as discussed below—a provider may do so inadvertently. Requiring such evidence could effectively deprive providers of a protection the Legislature clearly intended.

*Id.*

Here, Defendant meets its burden as to the first two elements with the affidavit of Danel Sobczak. Docket no. 24-3 at 1. In June 2016, Sobczak was the Operations General Manager for the Buffalo Wild Wings location at which Valdez was allegedly over-served prior to the automobile collision that precipitated this lawsuit. Sobczak states that "Buffalo Wild Wings requires staff that may serve alcohol in all Texas restaurants to complete a TABC approved alcohol seller training program before they are allowed to service alcohol to guests." *Id.* He states that Buffalo Wild Wings "also has its own responsible alcohol service policies above and beyond the required TABC training," as Buffalo Wild Wings uses the "National Restaurant Association Educational Foundation program known as 'ServSafe Alcohol.'" *Id.* Sobczak states that "I required each of the employees that would be responsible for serving alcohol at this location, including

servers, shift leaders, and bartenders, to review responsible alcohol service policies." *Id.* at 3. Further, he states that "I have personal knowledge that all employees who worked the date of the incident, that were in a position to serve alcohol to customers, were TABC Certified and would have successfully completed the 'ServSafe Alcohol' training program." *Id.*

This undisputed summary judgment evidence establishes the first two elements of the statutory safe harbor. The burden thus shifts to Plaintiffs to establish that Defendant "encouraged" the employees that allegedly over-served Valdez to over-serve customers. Whatever the precise meaning of "encourage" as intended by the Texas Legislature and as interpreted in the case law, Plaintiffs do not allege any conduct on Defendant's part that raises a triable fact issue as to whether Defendant encouraged its employees to violate the law and over-serve. Thus, the Court finds that the safe harbor applies and warrants dismissal of Plaintiffs' Dram Shop Act claim.

### 3. Negligent security

Finally, Plaintiffs allege that the "security [Defendant] provided to prevent these foreseeable events was insufficient for the event, inadequate for the purpose intended, and negligently and recklessly executed." Docket no. 6 at 5.

Under Texas law, property owners generally have no legal duty to protect people from third-party criminal acts, but a property owner who "controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *UDR Texas Properties, L.P. v. Petrie*, 517 S.W.3d 98, 100 (Tex. 2017) (quoting *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997)).

8

On this record, it is difficult to determine how Plaintiffs' allegation that Defendant did not provide enough security applies to the facts as presented. Although not included under the "Negligent Security" heading in the complaint, Plaintiffs allege under the "Negligence" heading that Defendant owed Plaintiffs a duty because it controlled the Buffalo Wild Wings premises. Docket no. 6 at 5. They also allege that the "probability of alcohol fueled risks and other harmful events" were foreseeable. *Id.*

Defendant argues that it does not know what "event" Plaintiffs refer to and that "[s]ecurity would not be required to oversee Mr. Valdez simply imbibing, while committing no criminal acts on the premises." Docket no. 24 at 12. Further, Defendant argues that inherent to a negligent security claim are "criminal activity on the property"—which must be foreseeable—and "injury to an invitee of the establishment." *Id.* Since there was no criminal activity on Buffalo Wild Wings property, foreseeable or otherwise, and no injury to an invitee, Defendant argues that Plaintiffs' claim fails as a matter of law.

The Court agrees. Although it is difficult to interpret Plaintiffs' allegations, particularly without the benefit of a response to Defendant's summary judgment motion, it appears that Plaintiffs allege Defendant breached a duty by failing to properly provide security to protect against criminal activity. If so, and this negligent security claim is meant to impose premises liability, the Court need not analyze whether the risk of a criminal act was reasonable or foreseeable because Plaintiffs were not invitees injured on Defendant's property. If this claim is meant to target Defendant's conduct in allegedly over-serving Valdez, however, it fails for the same reason Plaintiffs' negligence claim fails—the Dram Shop Act's exclusivity provision. Thus, there is no genuine issue of material fact as to Plaintiffs' negligent security claim and summary judgment is appropriate.

## CONCLUSION

Defendant's Motion for Summary Judgment (docket no. 24) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiffs, and it is ORDERED and ADJUDGED that Plaintiffs shall take nothing by their claims and their claims are DISMISSED WITH PREJUDICE. The Clerk is directed to CLOSE this case.

It is so ORDERED.

SIGNED this 14th day of January, 2019.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE